UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:20-cv-24939

JENNIFER MCLENDON, as Personal
Representative of the Estate of
JAMES MCLENDON,

       Plaintiff,

v.

CARNIVAL CORPORATION,
a Panamanian Corporation d/b/a
CARNIVAL CRUISE LINE,

       Defendant.

_____ /

**COMPLAINT FOR DAMAGES**
**AND DEMAND FOR TRIAL BY JURY**

The Plaintiff, JENNIFER MCLENDON, as Personal Representative of the Estate of

JAMES MCLENDON ("Decedent"), by and through undersigned counsel, sues the Defendant,

CARNIVAL CORPORATION, and alleges as follows:

**GENERAL ALLEGATIONS**

1.    This is an action for damages which exceed Seventy-Five Thousand ($75,000.00)

Dollars, and the court has diversity jurisdiction pursuant to 28 USC §1332.

2.    The Plaintiff, JENNIFER MCLENDON, is the widow and survivor of JAMES

MCLENDON and the duly appointed Personal Representative of the Estate of JAMES

MCLENDON ("JAMES MCLENDON"), deceased. Attached hereto and made a part hereof as

Exhibit 1 is a copy of the "Entry Appointing Fiduciary; Letters of Authority" issued on October

28, 2020, by the Probate Court of Franklin County, Ohio.

3.    At all times material the Plaintiff, JENNIFER MCLENDON, as Personal Representative of the Estate of JAMES MCLENDON, was and is a resident and citizen of the State of Ohio.

4.    At all times material, the Defendant, CARNIVAL CORPORATION, hereafter referred to as "CARNIVAL", was and is a foreign corporation with its principal place of business in Miami-Dade County, Florida.

5.    At all times material, the people working at the ship's medical center, including its medical personnel, were employees or agents of the Defendant, CARNIVAL, and were at all times material acting within the scope and course of their employment or agency with CARNIVAL.

6.    At all times material, the Defendant, CARNIVAL, was the owner and/or operator of the cruise ship CARNIVAL *Sensation*.

7.    On December 25, 2020, the decedent, JAMES MCLENDON, was a passenger on the CARNIVAL *Sensation*.

8.    On that date, JAMES MCLENDON was experiencing stomach pain, fatigue, vomiting, and loss of consciousness on the CARNIVAL *Sensation*.

9.    JAMES MCLENDON was allergic to penicillin.

10.    JAMES MCLENDON and his family went to the ship doctor and complained of the symptoms he was having. However, the ship's doctor misdiagnosed JAMES MCLENDON, failed to diagnose his Acute Pancreatitis and Ischemic, Intestinal Necrosis, Fatty Liver Disease, and Cardiomegaly, and provided him with a Rocephin shot (which is known to be dangerous to those with penicillin allergies) without taking a history of JAMES MCLENDON or confirming that he was not allergic to penicillin, and without informing JAMES MCLENDON (who was

experiencing loss of consciousness) or JENNIFER MCLENDON that penicillin was being administered to JAMES MCLENDON.

11.   After examining him, the ship doctor said JAMES MCLENDON was unfit to sail, and told JAMES MCLENDON and JENNIFER MCLENDON to gather their belongings and to get off the ship.

12.   The ship doctor told them there was a hospital in the Bahamas and that they would send paramedics to transport them to that hospital.

13.   One of Carnival's nurses said that a paramedic was called and was on the way to pick JAMES MCLENDON up.

14.   However, this was either not true and/or CARNIVAL otherwise failed to take appropriate action to ensure that a paramedic and/or adequate transportation was arranged, as JAMES MCLENDON and JENNIFER MCLENDON waited a lengthy period of time, and no paramedic or other transport showed up.

15.   As such, JENNIFER MCLENDON spoke to an intake person at the Bahamian hospital after this long wait, and was told that a paramedic was not on its way to pick up JAMES MCLENDON and that they could not send a paramedic unless they provided payment for an unaffordable large amount of money up front, which JAMES MCLENDON and JENNIFER MCLENDON were unable to pay during this emergency, and a paramedic from that hospital never came.

16.   As such, JAMES MCLENDON and JENNIFER MCLENDON were forced to go to a public hospital in the Bahamas instead, but this public hospital was not able to adequately treat JAMES MCLENDON, as this hospital appeared to be changing its treatment plan frequently, not tending to him quickly, and appeared to be taking his situation lightly (i.e., joking about it), and

according to the ship's doctor, this public hospital was not as skilled to treat JAMES MCLENDON's diabetic issues.

17.   As such, due the delay and other negligence in arranging transport for JAMES MCLENDON and/or failing to make alternative arrangements such as medically evacuating him from the ship, he passed away in this public hospital.

18.   After he passed away, CARNIVAL refunded the cruise cost of JAMES MCLENDON and JENNIFER MCLENDON and waived the medical fees occurred on the ship, indicating they knew they were at fault.

19.   The ship's medical center was not adequately prepared and/or set up to provide adequate first aid, treatment, and/or other help to JAMES MCLENDON, as it was not open during its normal hours of operation, it substantially delayed in treating JAMES MCLENDON, and for other reasons.

20.   JAMES MCLENDON is survived by his widow, JENNIFER MCLENDON, who was relying upon him for financial and other support and services until his death.

## COUNT I: NEGLIGENT FIRST AID, MEDICAL CARE, AND/OR OTHER NEGLIGENCE VIA EMPLOYEES OR ACTUAL AGENTS

Plaintiff readopts and realleges each and every allegation contained in paragraphs 1 through 20 as though fully set forth herein, and further alleges as follows:

21.   The Defendant owed a duty to JAMES MCLENDON to provide prompt and appropriate first aid, medical care, and/or otherwise adequate attention and care to him when it treated him at the CARNIVAL *Sensation* medical center.

22.   The Defendant, CARNIVAL, by and through the acts of its crew and/or apparent crew, including its medical personnel, was negligent, in one or more of the following ways:

(a) in failing to properly, reasonably, and timely diagnose or assess the condition of JAMES MCLENDON;

(b) in failing to properly, reasonably, and timely treat JAMES MCLENDON, including by taking an unreasonably long amount of time for its medical and other staff to adequately treat him and/or make adequate arrangements; and

(c) in failing to properly, reasonably, and timely prepare or set up to treat JAMES MCLENDON; and

(d) in failing to properly, reasonably, and timely obtain consultations with appropriate specialists; and

(e) in failing to have reasonably accessible equipment during an emergency; and

(f) in deviating from the standard of care for patients in JAMES MCLENDON's circumstances; and

(g) in failing to properly, reasonably, and timely arrange for paramedic(s) and/or other transport to assist JAMES MCLENDON; and

(h) in failing to properly, reasonably, and timely advise, warn, inform, and/or otherwise appraise JAMES MCLENDON or JENNIFER MCLENDON about the initial hospital Defendant mentioned, including its paramedic(s) and/or other transport, as well as misinforming JAMES MCLENDON and JENNIFER MCLENDON by incorrectly advising them that paramedic(s) and/or other transport were coming for JAMES MCLENDON (when in fact, they were not), and by failing to properly, reasonably, and timely inform them that paramedic(s) and/or other transport would not transport JAMES MCLENDON without payment of an unaffordable large sum of money up front; and

(i) in failing to properly, reasonably, and timely train its staff to respond to emergency situations such as JAMES MCLENDON's; and

(j) in failing to properly, reasonably, and timely call for medical care; and

(k) in failing to properly, reasonably, and timely take an adequate history of JAMES MCLENDON and/or failing to properly, reasonably, and timely confirm whether he was allergic to penicillin before treating him with Rocephin; and

(l) in administering Rocephin to JAMES MCLENDON despite its danger to him; and

(m) in failing to properly, reasonably, and timely medically evacuate JAMES MCLENDON to the United States or another adequate place where he could receive the treatment he needed; and

(n) in failing to make proper, reasonable, and timely communications and arrangements to send JAMES MCLENDON to an appropriate facility that could properly, reasonably, and timely treat his condition.

23.     CARNIVAL acknowledged through its hiring and holding out of its crew, including its medical personnel, that they acted for CARNIVAL. These crew and/or personnel manifested the acceptance of that undertaking by providing care and service to CARNIVAL's passengers, and CARNIVAL controlled or had the right to control the actions of its crew, including its medical personnel, as more fully set forth infra and supra.

24.     CARNIVAL directly paid its crew, including its medical personnel, for their work in the ship's medical center, and other parts of the ship, and for their work otherwise treating or serving its passengers.

25.     The medical center, and other parts of the ship were created, owned, and/or operated by CARNIVAL.

26.     CARNIVAL hired and had the right to fire its employees or agents, including its medical personnel.

27.     As a direct and proximate result of the negligence of the Defendant through its employees/agents, as described above, JAMES MCLENDON died.

28.     Had JAMES MCLENDON received the appropriate care and treatment, he more likely than not would have survived.

29.  As a result of the negligence of the Defendant, through its employees/agents as heretofore described, the Estate of JAMES MCLENDON has become obligated to pay significant medical bills and other expenses.

30.  As a result of the negligence of the Defendant, as heretofore described, JENNIFER MCLENDON, the widow of the decedent, has lost his medical insurance, the value of his services, and incurred expenses for first aid, medical, and/or other care, and funeral services.

31.  The Defendant's negligence proximately caused JAMES MCLENDON's death.

WHEREFORE, the Plaintiff, JENNIFER MCLENDON, as Personal Representative of the Estate of JAMES MCLENDON, demands judgment against the Defendant, CARNIVAL, for compensatory damages, including pre-judgment interest, costs, and all damages allowable by maritime and state law on behalf of the Estate and JAMES MCLENDON's survivor, JENNIFER MCLENDON, and further demands trial by jury of all issues so triable as a matter of right, as well as any further relief as this Court deems just and appropriate.

## COUNT II: NEGLIGENCE (VICARIOUS LIABILITY OF CARNIVAL BASED UPON APPARENT AGENCY)

Plaintiff readopts and realleges each and every allegation contained in paragraphs 1 through 20 as though fully set forth herein, and further alleges as follows:

32.  The Defendant owed a duty to JAMES MCLENDON to provide prompt and appropriate first aid, medical care, and/or otherwise adequate attention and care when it treated him at the CARNIVAL *Sensation* medical center.

33.  The Defendant, CARNIVAL, by and through the acts of its crew and/or apparent crew, including its medical personnel, was negligent, in one or more of the following ways:

(a) in failing to properly, reasonably, and timely diagnose or assess the condition of JAMES MCLENDON;

(b) in failing to properly, reasonably, and timely treat JAMES MCLENDON, including by taking an unreasonably long amount of time for its medical and other staff to adequately treat him and/or make adequate arrangements; and

(c) in failing to properly, reasonably, and timely prepare or set up to treat JAMES MCLENDON; and

(d) in failing to properly, reasonably, and timely obtain consultations with appropriate specialists; and

(e) in failing to have reasonably accessible equipment during an emergency; and

(f) in deviating from the standard of care for patients in JAMES MCLENDON's circumstances; and

(g) in failing to properly, reasonably, and timely arrange for paramedic(s) and/or other transport to assist JAMES MCLENDON; and

(h) in failing to properly, reasonably, and timely advise, warn, inform, and/or otherwise appraise JAMES MCLENDON or JENNIFER MCLENDON about the initial hospital Defendant mentioned, including its paramedic(s) and/or other transport, as well as misinforming JAMES MCLENDON and JENNIFER MCLENDON by incorrectly advising them that paramedic(s) and/or other transport were coming for JAMES MCLENDON (when in fact, they were not), and by failing to properly, reasonably, and timely inform them that paramedic(s) and/or other transport would not transport JAMES MCLENDON without payment of an unaffordable large sum of money up front; and

(i) in failing to properly, reasonably, and timely train its staff to respond to emergency situations such as JAMES MCLENDON's; and

(j) in failing to properly, reasonably, and timely call for medical care; and

(k) in failing to properly, reasonably, and timely take an adequate history of JAMES MCLENDON and/or failing to properly, reasonably, and timely confirm whether he was allergic to penicillin before treating him with Rocephin; and

(l) in administering Rocephin to JAMES MCLENDON despite its danger to him; and

(m) in failing to properly, reasonably, and timely medically evacuate JAMES MCLENDON to the United States or another adequate place where he could receive the treatment he needed; and

(n) in failing to make proper, reasonable, and timely communications and arrangements to send JAMES MCLENDON to an appropriate facility that could properly, reasonably, and timely treat his condition.

34.    At all times material, the Defendant, CARNIVAL, held out the people working at the ship's medical center, including its medical personnel, as its apparent agents. The Defendant, CARNIVAL, promotes the people working at the ship's medical center, and represents them as being their apparent agents through brochures, internet advertising, and communications to passengers on the vessel. CARNIVAL held out the people working at the ship's medical center, including its medical personnel, as being its direct employees or its actual agents.

35.    The Defendant, CARNIVAL, promotes the idea that the people working at the ship's medical center, including its medical personnel, are its apparent agents as part of a marketing tool to induce passengers such as JAMES and JENNIFER MCLENDON to cruise on its ships.

36.    CARNIVAL manifested to JAMES and JENNIFER MCLENDON in this case that the people working at the ship's medical center, including its medical personnel, were acting as its apparent agents in various ways, including but not limited to the following:

  (a)   the people working at the ship's medical center, including its medical personnel, worked at what the Defendant describes in its advertising as "its" medical center;

  (b)   that the medical center and other parts of the ship are owned and operated by CARNIVAL, which pays to stock the medical center and other parts of the ship with all supplies, various medicines and equipment;

  (c)   that the passenger is billed directly by CARNIVAL through the passengers' Sign and Sail Card, whereas the people working at the ship's medical center, including its medical personnel, are paid salaries and/or hourly wages by CARNIVAL, to work in the medical center; and

  (d)   that CARNIVAL has the right to hire and fire the people working at the ship's medical center, including its medical personnel,

37.    The people working at the ship's medical center, including its medical personnel, were required by CARNIVAL to wear CARNIVAL uniforms which include name tags, and which display the CARNIVAL name and logo.

38.   Further, the cruise line holds out the people working at the ship's medical center, including its medical personnel, as the apparent agents of the cruise line. The Defendant through its actions and conduct represents to its cruise passengers including, but not limited to JAMES and JENNIFER MCLENDON, that the people working at the ship's medical center, including its medical personnel, work for the benefit of the Defendant. These actions and conduct of the cruise line include but are not limited to the following:

(a)   The Defendant controls the attire of the employees or agents, including its medical personnel;

(b)   As to its physicians, the Defendant cruise line offers physicians benefits including senior officer status, round-trip transportation from residence to the ship, uniforms, meals, private furnished cabins with refrigerators, telephones, computers with internet access, daily housekeeping services, and indemnification and health care;

(c)   The Defendant cruise line requires that the ship's physicians, as well as the people working at the ship's medical center, including its medical personnel, sail with the ship;

(d)   The Defendant provides its onboard medical center for treatment of its passengers;

(e)   The Defendant cruise line allows and requires the people working at the ship's medical center, including its medical personnel, to operate and provide services out of the ship's medical center which is provided by the cruise line and which is equipped and stocked by the cruise line;

(f)   The Defendant cruise line charges the services of the medical center, which includes services of the people working at the ship's medical center, and charges for the first aid, medical, and/or other equipment and goods provided by the cruise line, to the passenger's onboard Sail and Sign Account;

(g)   The people working at the ship's medical center, including its medical personnel, represented themselves to passengers that they are employees of Defendant, CARNIVAL;

(h)   As to the ship's medical personnel, the Defendant cruise line limits the hours and area of the ship where passengers can receive first aid, medical, and/or other services to the ship's Medical Center, which is staffed exclusively by shipboard medical personnel;

(i)   The Defendant publishes the hours of operation of its medical center and other

**ARONFELD TRIAL LAWYERS**
**Aronfeld.com**

parts of the ship in its flyer distributed to all passengers aboard its ships; and

(j) The Defendant cruise line requires the people working at the ship's medical center, including its medical personnel, to be on call (in the case of the medical center, for 24 hours) to attend to passenger first aid, medical, and/or other emergencies.

39. The ship's physicians are considered to be Officers on board the vessel and members of the crew, and were introduced to the passengers as the ship's Officers.

40. The people working at the ship's medical center, including its medical personnel, were held out to the passengers by CARNIVAL as members of the ship's crew.

41. The Defendant put the people working at the ship's medical center, including its medical personnel, under the command of the ship's superior officers, including the Master of the ship.

42. The cruise line represents to immigration authorities that the people working at the ship's medical center, including its medical personnel, are members of the ship's crew.

43. The people working at the ship's medical center, including its medical personnel, are permitted to eat with the ship's crew.

44. The people working at the ship's medical center, including its medical personnel, provide first aid, medical, and/or other services on the ship and JAMES and JENNIFER MCLENDON had no alternative to the ship's first aid, medical, and/or other care.

45. Based on the foregoing, JAMES and JENNIFER MCLENDON reasonably believed that the people working at the ship's medical center, including its medical personnel, were acting as direct employees or actual agents on behalf of the Defendant, and were never given any reason to believe otherwise.

46. JAMES and JENNIFER MCLENDON relied to their detriment on their belief that the people working at the ship's medical center, including its medical personnel, were direct

employees or actual agents of the Defendant in that they would not have gone on the subject cruise had they believed that these people were not direct employees or actual agents of the Defendant.

47. As a result of JAMES and JENNIFER MCLENDON's reliance upon these representations that the people working at the ship's medical center, including its medical personnel, were employees and/or otherwise agents of Defendant, JAMES MCLENDON was not properly treated in a reasonable amount of time, as JAMES and JENNIFER MCLENDON relied upon the advice of Defendant's medical staff due to their belief that this staff was acting on behalf of Defendant, which purports to care about the safety of its passengers, and which they had believed they could trust, and JAMES MCLENDON died.

48. That the Defendant is liable to the Plaintiff for any and all damages as a result of negligent first aid, medical care, and/or other negligence by the people working at the ship's medical center, including its medical personnel, under the theory of apparent agency.

WHEREFORE, the Plaintiff, JENNIFER MCLENDON, as Personal Representative of the Estate of JAMES MCLENDON, demands judgment against the Defendant, CARNIVAL, for compensatory damages, including pre-judgment interest, costs, and all damages allowable by maritime and state law on behalf of the Estate and JAMES MCLENDON's survivor, JENNIFER MCLENDON, and further demands trial by jury of all issues so triable as a matter of right, as well as any further relief as this Court deems just and appropriate.

### DEMAND FOR JURY TRIAL

Plaintiff, JENNIFER MCLENDON, as Personal Representative of the Estate of JAMES MCLENDON, demands trial by jury on all issues so triable.

**ARONFELD TRIAL LAWYERS**
**Aronfeld.com**
**Page 12 of 13**

Dated: December 2, 2020.

By:    */s/ Matthias M. Hayashi*
**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@aronfeld.com
**Abby Hernández Ivey, Esq.**
Florida Bar No.: 1002774
aivey@aronfeld.com
**Matthias M. Hayashi, Esq.**
Florida Bar No.: 115973
mhayashi@aronfeld.com
**ARONFELD TRIAL LAWYERS**
1 Alhambra Plaza | Penthouse
Coral Gables, Florida 33134
P:    (305) 441.0440
F:    (305) 441.0198
*Attorneys for Plaintiff*
